**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| A. JABIR NASH,<br><br>Plaintiff,<br><br>v.<br><br>PATERSON PUBLIC SCHOOLS, DR. LAURIE W. NEWELL, BRIDGET NAVIERRA, and MAZUZA MATARI,<br><br>Defendants. | No. 25cv13405 (EP) (LDW)<br><br>**MEMORANDUM ORDER** |

**PADIN, District Judge.**

*Pro se* Plaintiff A. Jabir Nash—a former teacher at Roberto Clemente Elementary School in Paterson, New Jersey—alleges that colleagues and school administration officials discriminated against him based on race after learning of his expunged criminal record. D.E. 1 ("Complaint" or "Compl.") at 3–6. Nash brings claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; and the Equal Protection Clause of the Fourteenth Amendment, through 42 U.S.C. § 1983. Compl. at 5–6.

Defendants—Paterson Public Schools (the "District") and three of its administrators, Superintendent Dr. Laurie W. Newell, Principal Bridget Naveira, and Vice Principal Mazuza Matari[1] (the "Individual Defendants")—move to dismiss under Federal Rule of Civil Procedure

[1] The docket caption spells this Defendant's name "Navierra," following the Complaint's caption page. The Complaint's party-information section, and the email address it supplies, spell the name "Naveira," which the Court uses. Compl. at 2. Plaintiff's own name appears variously across his filings; the Court uses the docket caption's "A. Jabir Nash."

12(b)(6).[2] D.E. 8 ("Motion" or "Mot."). Nash opposes. D.E. 10 ("Opposition" or "Opp'n"); D.E. 18 ("Amended Opposition" or "Am. Opp'n"). Defendants reply. D.E. 14 ("Reply").

The Complaint fails for two reasons. *First*, the ninety-day window for suing on a U.S. Equal Employment Opportunity Commission ("EEOC") right-to-sue notice closed before Nash filed this action, foreclosing his Title VII, ADEA, and ADA claims. Nash concedes as much—by his own account, he filed suit roughly eleven days after that window closed—and the record does not support equitable tolling extending the ninety-day suit deadline. *Second*, the Complaint never connects Nash's race to any of the alleged discriminatory treatment. Nor does it identify a discriminatory District policy or custom. The Equal Protection Claim therefore also fails. Accordingly, the Court will **GRANT** the Motion and **DISMISS** the Complaint ***without prejudice***.

## I. BACKGROUND[3]

### A. Factual Background

In August 2024, Nash, an African American man, interviewed with the District for a position as an Educational Media Specialist at Roberto Clemente Elementary School. Compl. at 4–5. He was hired, signed an employment contract, and began work on September 28, 2024. *Id.* at 5. He also signed a Teacher Residency Agreement (the "Agreement"), endorsed by Principal Naveira and Vice Principal Matari, under New Jersey's provisional educator program, which is a

[2] Unless stated otherwise, the Court refers to the Federal Rules of Civil Procedure.

[3] The facts in this section are taken from allegations in the Complaint, which the Court presumes true for purposes of the Motion. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The Complaint consists of this District's form complaint and a single typed attachment and contains no numbered paragraphs. The Court therefore cites the Complaint's CM/ECF-generated page numbers.

year-long, mentorship-based preparation model whose completion supports certification as an educator. *Id.*

Within three weeks of Nash's hiring, a District staff member (who asked to remain anonymous) told him that colleagues had searched for him on the internet and had discovered "a past criminal action which was expunged, and I was exonerated from." *Id.* The same colleague stated that "the administration and the staff did not want to work with [Nash] and did not feel comfortable working with [him] nor were they happy about [him] being around the students." *Id.*

What followed, Nash alleges, was isolation. Conversations ended when he walked into the teachers' room; teachers waited for the next elevator; and he was denied access to school files he should have had the ability to access. *Id.* Principal Naveira and Vice Principal Matari assured Nash he "would be fine" and that they would assist him through the mentoring process, but no mentor was ever assigned. *Id.* Yet despite these alleged assurances, Nash was left off staff-wide emails. *Id.* As a result, he learned of a December 2024 holiday party too late, finding that the sign-up list was full, and was told the morning after the party that it featured an "open forum regarding [Nash's] past criminal history which was expunged." *Id.* at 5–6.

Nash acknowledges he "did not do well regarding teacher evaluations," which he attributes to the absence of any support from the District. *Id.* at 6. He received his final evaluation on May 15, 2025, with a "non-approval for continued employment." *Id.*

Nash brings his claims through the Court's form complaint for civil rights actions under § 1983. *See* Compl. at 3. Nash alleges that Defendants, acting under color of state law, violated his rights "by relying on [his] expunged criminal records in denying [him] the opportunity to fairly fulfill [his] job," that he "never was provided with a mentor as a first year teacher," and that Defendants "denied [him] equal protection and . . . due process guaranteed by U.S. and N.J.

Constitution."[4] *Id.* at 4. Each Individual Defendant is sued in an official capacity only. *Id.* at 2–3. Nash seeks $10 million in compensatory damages, $5 million for pain and suffering, reinstatement, and issuance of his educator certification. *Id.* at 7.

**B. Procedural History**

Nash filed a charge of discrimination with the EEOC, Charge No. 524-2025-00975. D.E. 8-4 ("Notice") at 2.[5] On April 3, 2025, the EEOC issued its Determination and Notice of Rights which closed the charge and informed Nash that any lawsuit "must be filed **within 90 days of the date you *receive* this notice**." Notice at 4 (emphasis in original). The Notice is addressed to Nash at his home in Plainfield, New Jersey. Notice at 2; Compl. at 2 (listing the Plainfield, New Jersey address as Nash's). Defense counsel attests that the Notice "was issued and released to Nash on April 3, 2025 via the EEOC portal." D.E. 8-2 ("Grieco Decl.") ¶ 3.

The Clerk received the Complaint, together with an application to proceed *in forma pauperis* ("IFP") and a motion for the appointment of *pro bono* counsel, on July 16, 2025. D.Es. 1-1 & 1-3. The Court granted the IFP application and directed that the Complaint be filed. D.E. 4. Judge Leda D. Wettre, U.S.M.J., later denied Nash's motion for *pro bono* counsel without prejudice. D.E. 16. Defendants were served, appeared, and moved to dismiss. *See* Dkt.; Mot.

Defense counsel received Nash's Opposition three days late, via email, on February 20, 2026, and objected. Opp'n. Judge Wettre accepted the Opposition as timely *nunc pro tunc*,

[4] Liberally construed, Nash pleads no facts supporting a distinct due process or New Jersey constitutional claim, and any such theory is dismissed without prejudice for the same reasons.

[5] The Court may consider the Notice. A court deciding a Rule 12(b)(6) motion may consider matters of public record and undisputedly authentic documents on which the plaintiff's claims are based. *See Ruddy v. U.S. Postal Serv.*, 455 F. App'x 279, 283 (3d Cir. 2011) ("[T]he District Court properly relied on [Plaintiff's] EEOC file, which [he] referenced in his complaint and which is integral to his claim[.]").

observing that Local Civil Rule 7.1(d)(5) would have entitled Nash to an automatic fourteen-day extension in any event. D.E. 11. This Court also accepted the Opposition and, in light of Nash's *pro se* status and first missed deadline, cautioned Nash about future deadlines and extended Defendants' time to reply. D.E. 12. Defendants replied on March 6, 2026. Reply.

Nash then filed a five-page Amended Opposition, dated March 8, 2026, and docketed March 31, 2026. Am. Opp'n. It asserts, for the first time, that New Jersey regulations required a mentoring program he never received; a school aide was "instructed not to reveal" the staff's internet searches; a colleague suggested Nash "stay out of their way"; Nash "was also the only African American male staff member in his working environment"; and the District is liable under *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978), for deliberate indifference. Am. Opp'n at 2–3. The Amended Opposition is silent on this action's timeliness.[6]

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court accepts all well-pleaded factual allegations as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings*

[6] Defendants ask the Court to disregard the Amended Opposition as an "improper sur-reply filed without leave from the Court," in violation of Local Civil Rule 7.1(d)(6). D.E. 19 at 1. This Court's practice, when a party proceeds *pro se*, is to reach the merits of his position rather than rest on a procedural default. *See Kemmo v. Island Transp. Corp.*, No. 25-18693, 2026 WL 1983881, at *4 (D.N.J. July 9, 2026) (declining to deem unanswered arguments conceded "in light of Plaintiff's *pro se* status"). The Court will therefore consider the Amended Opposition. That consideration, however, does not convert it into a pleading because "a plaintiff should not be able effectively to amend a complaint through any document short of an amended pleading." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 109 n.9 (3d Cir. 2002). The Court accordingly takes the Amended Opposition's assertions into account only in deciding whether amendment would be futile. Because the Amended Opposition does not change the outcome, Defendants' alternative request for seven days to respond, D.E. 19, is **DENIED** as **MOOT**.

*Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Courts may not consider "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

Because Nash proceeds *pro se*, the Court construes his Complaint liberally and holds it to a less stringent standard than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Liberal construction, however, does not relax the obligation to plead facts: a *pro se* plaintiff must still allege enough to state a plausible claim. *Mala v. Crown Bay Marina*, 704 F.3d 239, 245 (3d Cir. 2013). The allegations must include "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

Because a statute of limitations is an affirmative defense, a defendant may raise it on a Rule 12(b)(6) motion only if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citation modified). In making that assessment, the Court may consider, along with the complaint, "matters of public record" and any "document integral to or explicitly relied upon in the complaint." *Id.*

## III. DISCUSSION

Nash alleges that colleagues and school officials shut him out after they found a criminal case that had been expunged, that the District never gave him the mentor the Agreement called for, and that the District then declined to continue his employment. Nash brings those allegations under Title VII, the ADEA, and the ADA (collectively, the "Statutory Claims"), and under the Equal Protection Clause through § 1983 (the "Equal Protection Claim"). Neither set of claims survives the Motion.

The ninety-day filing period bars the Title VII, ADEA, and ADA claims. Nash is presumed to have received the Notice on April 6, 2025, and he started this action nine days *after* the ninety-day period closed—a delay Nash concedes. Equitable tolling does not excuse that delay because the impairments Nash describes did not keep him from working, receiving his mail, or preparing this suit during those ninety days. Nash's Equal Protection Claim is timely but fails to state a claim.

### A. The EEOC's Ninety-Day Period Expired Before Nash Filed This Action

Nash's Statutory Claims were subject to a ninety-day suit deadline, meaning that Nash was required to file any lawsuit related to the alleged employment discrimination within ninety days of receiving the Notice. *Williams v. E. Orange Cmty. Charter Sch.*, 396 F. App'x 895, 897 (3d Cir. 2010) (applying the ninety-day post-Notice suit deadline to Title VII and ADA claims); *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 383 n.11 (3d Cir. 2007) (applying the ninety-day post-Notice suit deadline to ADEA claims).

The ninety-day deadline is strictly enforced. *Burgh v. Borough Council of Montrose*, 251 F.3d 465, 470 (3d Cir. 2001) (treating the ninety-day filing period as a statute of limitations and stating that "in the absence of some equitable basis for tolling, a civil suit filed even one day late

is time-barred and may be dismissed" (citation omitted)). Nash's *pro se* status does not soften that rule because courts are "bound by the strict procedural requirements established by Congress, which 'are not to be disregarded by courts out of a vague sympathy for particular litigants.'" *Rockmore v. Harrisburg Prop. Serv.*, 501 F. App'x 161, 164 (3d Cir. 2012) (quoting *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984) (per curiam)).

The Court does not, however, accept Defendants' account of when the clock began to run. Defendants date it to April 3, 2025, because the Notice was "issued and released to Plaintiff . . . via the EEOC portal" that day. Grieco Decl. ¶ 3; *see* Mot. at 7. The Third Circuit has rejected that theory. Section 2000e-5(f)(1) ties the ninety days to "the giving of such notice," which requires "some affirmative act of communication from the EEOC to the plaintiff or [his] lawyer." *Hayes v. N.J. Dep't of Hum. Servs.*, 108 F.4th 219, 223 (3d Cir. 2024). Posting a right-to-sue letter to the EEOC's online portal, standing alone, is not such an act, and nothing in this record shows that anyone told Nash the Notice had been posted. *Id.*

Still, *Hayes* provides the rule on how to calculate when Nash's ninety-day suit deadline expired. Where the date a claimant actually received the notice is unknown, a court presumes receipt three days after the EEOC sent it. *Id.* at 222. The EEOC issued the Notice (addressed to Nash's home) on April 3, 2025. Notice at 2. Nash is therefore presumed to have received it on April 6, 2025.[7] His suit was due ninety days later, by Saturday, July 5, 2025—extended to Monday, July 7, 2025. Fed. R. Civ. P. 6(a)(1)(C). The Clerk received the Complaint on July 16, 2025. *See* Compl. So Nash started this action nine days after his deadline expired.

[7] Although it is unclear *how* Nash received the Notice, he does not dispute that he *did* receive the Notice, and his Opposition proceeds from a presumed receipt date of April 6, 2025. Opp'n at 2. The Court takes that date as given.

Nash does not contend otherwise. His Opposition states that he filed "following receipt of a Right-to-Sue Notice . . . dated April 3, 2025," and that "the filing occurred approximately 11 days beyond the presumed 90-day period." Opp'n at 2 (Nash's eleven-day figure does not account for the weekend extension under Rule 6(a)(1)(C)). His sworn declaration adds that he was "receiving mail normally" throughout the period. *Id.* at 5. Unless equitable tolling applies, Nash's Title VII, ADEA, and ADA claims are time-barred.

**B. Equitable Tolling Does Not Apply**

The ninety-day limit "is akin to a statute of limitations rather than a jurisdictional bar. Therefore, the time limit is subject to tolling." *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 239–40 (3d Cir. 1999). A court may toll the deadline in six circumstances: (1) "when a claimant received inadequate notice of [his] right to file suit," (2) "where a motion for appointment of counsel is pending," (3) "where the court has misled the plaintiff into believing that [he] had done everything required of [him]," (4) "when the defendant has actively misled the plaintiff," (5) "when the plaintiff 'in some extraordinary way' was prevented from asserting [his] rights," or (6) "when the plaintiff timely asserted [his] rights in the wrong forum." *Formato v. Mount Airy #1, LLC*, No. 19-2237, 2021 WL 3403543, at *2 (M.D. Pa. Aug. 4, 2021) (citing *Seitzinger*, 165 F.3d at 240). But tolling does "not extend to what is at best a garden variety claim of excusable neglect." *Seitzinger*, 165 F.3d at 241 (citation omitted). Nash "bears the burden to show that equitable tolling is warranted." *Carter v. Keystone*, 360 F. App'x 271, 273 (3d Cir. 2010) (citation omitted).

Nash invokes the fifth circumstance, which provides equitable tolling where a plaintiff was prevented from asserting his rights in "some extraordinary way." *Formato*, 2021 WL 3403543, at *2. Nash alleges that (1) he was wrongfully convicted, served approximately nine years in prison,

and was diagnosed with post-traumatic stress disorder ("PTSD") while incarcerated; and (2) his conviction was ultimately overturned, the indictment dismissed, and the record expunged. Opp'n at 3. According to Nash, his PTSD and depression "substantially impair[ed his] concentration, executive functioning, motivation, and ability to manage complex legal matters," and he filed this action "as soon as [he] was able to meaningfully address [his] legal rights." *Id.* at 4–5. Nash states the delay was "minimal, unintentional, and not in bad faith." *Id.* at 5.

The Court acknowledges the serious nature of the circumstances that Nash alleges. Courts that "have allowed equitable tolling based on mental illness have done so only in exceptional circumstances, such as where the complainant is institutionalized or adjudged mentally incompetent." *Fisher v. Hollingsworth*, 115 F.4th 197, 209 (3d Cir. 2024) (citation modified). Moreover, the mental condition must also "somehow have affected the [plaintiff's] ability to file" the action itself. *Green v. Postmaster Gen.*, 437 F. App'x 174, 178 (3d Cir. 2011) (citation omitted). The Third Circuit has accordingly refused to toll where documented PTSD or severe depression did not stop the plaintiff from functioning during the period at issue. *See, e.g.*, *Fisher*, 115 F.4th at 209 (denying tolling where the plaintiff's PTSD symptoms had worsened but he "managed to file suit"); *Green*, 437 F. App'x at 178 (denying tolling where the plaintiff's severe depression did not prevent her from making other filings in the same window).

The same is true here. During the ninety days at issue—April through early July 2025—Nash worked as an educator during that period, including at the time of his May 15, 2025, final evaluation. Compl. at 6. He was "receiving mail normally" during that period. Opp'n at 5. And he started preparing this suit within the ninety-day window: he signed his motion for the appointment of *pro bono* counsel on June 24, 2025, and mailed that motion, the Complaint, and an

IFP application to the Clerk on July 3, 2025.[8] D.Es. 1-3 at 4 & 1-4. Nash also has not shown diligence. His declaration offers the conclusion—that he acted "as soon as [he] was able"—but no supporting facts. Opp'n at 5.

The Court does not minimize the nine years Nash lost to a conviction later vacated. But that history precedes these claims by years, and equitable tolling turns on his capacity between April and July 2025. Finding neither an extraordinary circumstance nor diligence, the Court will not toll the ninety-day period. The Title VII, ADEA, and ADA claims will be **DISMISSED** as time-barred.[9]

### C. The Complaint Does Not State an Equal Protection Claim

"[T]o bring a successful § 1983 claim for denial of equal protection, a plaintiff must show that [he] received different treatment than other similarly situated individuals." *Leibert v. Phila. Hous. Auth.*, 474 F. App'x 76, 79 (3d Cir. 2012) (citing *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 151 (3d Cir. 2005)). Here, Nash "has not alleged that [he] was treated differently than any other" District employee. *Leibert*, 474 F. App'x at 79. In fact, the Complaint identifies no comparator. The closest Nash comes to identifying a comparator is his allegation that

---

[8] Nash's mailing of the Complaint did not start this action. A civil action is commenced by filing a complaint with the court, Fed. R. Civ. P. 3, and a complaint is filed by delivering it to the clerk, Fed. R. Civ. P. 5(d)(2)(A). The action therefore began when the Clerk *received* the Complaint on July 16, 2025—nine days after the ninety-day period closed. That the Complaint arrived with an IFP application does not push the date later. Although the Complaint was not formally filed until the Court granted that application, D.E. 4, the Third Circuit deems a complaint "constructively filed as of the date that the clerk received the complaint," so long as the court ultimately grants leave to proceed IFP. *McDowell v. Del. State Police*, 88 F.3d 188, 191 (3d Cir. 1996). July 16 is thus the earliest filing date the law permits. The Court also notes that neither brief addresses the Complaint's mailing date and how, if at all, it affects this action. *See* Mot.; Opp'n.

[9] Because they are untimely, the Court does not reach Defendants' alternative argument that these claims are also insufficiently pleaded. *See* Mot. at 8–9.

a gym teacher had broader access to school files than Nash did, Compl. at 5, but it says nothing about who the gym teacher is or why the two are alike in any meaningful respect.

Despite the absence of a comparator, Nash's race discrimination claim could still survive if he pleaded statements suggesting racial animus or similar discrimination against other employees. *See Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 702–03 n.2 (3d Cir. 2010). The Complaint fails here, too, because Nash provides no details about the alleged discrimination other than that Defendants supposedly acted on Nash's expunged criminal record. Nash pleads that he is African American and alleges treatment that, if proven, would be considered demeaning. Compl. at 5. But Nash's allegations, as pleaded, are connected to his criminal record—not his race. The searches turned up "a past criminal action," and the staff's discomfort followed that discovery. *Id.* at 4–6. The holiday party "open forum" concerned Nash's "past criminal history." *Id.* And the Complaint attributes the denial of opportunity to Defendants' "relying on my expunged criminal records." *Id.* An expunged criminal record is not a race, however, and Nash does not tie Defendants' reliance on that record to Nash's race. *See Marable v. Oaks Integrated Care, Inc.*, No. 22-6168, 2024 WL 1406648, at *4 (D.N.J. Apr. 2, 2024) (dismissing a *pro se* plaintiff's Title VII race claim where the pleadings contained "no allegations of any statement or action which could conceivably support a claim of overt or explicit racial animus, or reflect discriminatory bias" (citation modified)).

Separately, Nash sues the Individual Defendants in their official capacities only. Compl. at 2–3. A suit against officers in their official capacities "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent," and is "to be treated as a suit against the entity" in all respects but name. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)

(citation modified). The claims against the Individual Defendants are therefore claims against the District.

The District, however, is not responsible under § 1983 for its employees' conduct simply because it employs them. The District is liable for its employees' conduct "only when the [District] itself is a 'moving force' behind the deprivation"—that is, when a District "policy or custom" played a part in the violation. *Id.* at 166. At the pleading stage, that means Nash "must identify a custom or policy, and specify what exactly that custom or policy was." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). The Complaint identifies no policy, custom, or decision by a final policymaker. *See* Compl. The Amended Opposition invokes *Monell*, 436 U.S. at 694, and asserts that the District was deliberately indifferent in failing to enforce its mentoring obligations, Am. Opp'n at 3. But a brief cannot amend a pleading. *See supra* note 6. Moreover, Nash describes no practice beyond his own case. One unassigned mentor is not a District policy or custom.

Nash's Equal Protection Claim will therefore be **DISMISSED *without prejudice***.

### D. Leave to Amend

Defendants ask that the dismissal be *with prejudice*. Mot. at 12. The Court declines to do so. Where a *pro se* civil rights complaint is vulnerable to dismissal under Rule 12(b)(6), a district court "must permit a curative amendment unless such an amendment would be inequitable or futile." *Grayson*, 293 F.3d at 108. Amendment is not futile here. As to the Statutory Claims, an amended pleading could allege facts supporting tolling. *See Kemmo*, 2026 WL 1983881, at *7 & n.8 (dismissing Title VII claims without prejudice because amendment could ameliorate tolling deficiency). As to the Equal Protection Claim, the Amended Opposition shows that Nash could articulate more than the Complaint contains. *See* Am. Opp'n at 2–3.

The Complaint will therefore be dismissed ***without prejudice***. While the Court grants Nash leave to amend the Complaint, *see Phillips*, 515 F.3d at 236, the Court cautions him that "any

amendment must have a good faith basis on which [he] can proceed," *Uygur v. Gensler*, No. 24-975, 2024 WL 3497888, at *4 (E.D. Pa. July 19, 2024).

## IV. CONCLUSION & ORDER

For the foregoing reasons,

**IT IS**, on this 2nd day of September 2026,

**ORDERED** that Defendants' Motion to Dismiss, D.E. 8, is **GRANTED**; and it is further

**ORDERED** that the Complaint, D.E. 1, is **DISMISSED** ***without prejudice***; and it is further

**ORDERED** that Defendants' alternative request for leave to respond to Plaintiff's Amended Opposition, D.E. 19, is **DENIED** as **MOOT**; and it is further

**ORDERED** that Plaintiff may file an amended complaint consistent with this Memorandum Order within **30 days** of this Order; and it is finally

**ORDERED** that the Clerk of Court shall send Plaintiff a copy of this Memorandum Order via regular mail.

Evelyn Padin, U.S.D.J.